UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ERNEST H. SANDERS, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   CAUSE NO. 1:21-cv-00221-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff Ernest H. Sanders appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). Because at least one of Sanders's arguments is persuasive, the Commissioner's final decision will be REVERSED and REMANDED for further proceedings in accordance with the Opinion and Order.

## I. FACTUAL AND PROCEDURAL HISTORY

Sanders applied for DIB on July 9, 2019, and SSI on August 17, 2019, alleging disability in each application as of January 1, 2014. (ECF 15 Administrative Record ("AR") 10, 308-09, 311-17). Sanders had previously applied for DIB and SSI in 2017, but his applications were denied initially and upon reconsideration. (AR 96-121, 124-49). Similarly, his current applications were denied initially and upon reconsideration. (AR 152-63, 166-87). After a timely request (AR 242-44), a hearing was held on December 10, 2020, before administrative law judge ("ALJ") William Pearson, at which Sanders, who was represented by counsel, and a

vocational expert ("VE") testified.  (AR 51-95).  On December 24, 2020, the ALJ rendered an

unfavorable decision to Sanders, concluding that he was not disabled because he could perform a

significant number of jobs in the economy despite the limitations caused by his impairments.

(AR 7-37).  Sanders's request for review was denied by the Appeals Council (AR 1-6), at which

point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. §§

404.981, 416.1481.

Sanders filed a complaint with this Court on June 3, 2021, seeking relief from the

Commissioner's decision.  (ECF 1).  In his appeal, Sanders alleges that:  (1) the ALJ

overemphasized his daily activities, and (2) the ALJ failed to incorporate psychological and

breathing related limitations into Sanders's residual functional capacity ("RFC").  (ECF 23 at 4).

At the time of the ALJ's decision, Sanders was fifty-three years old (AR 35), had an

eleventh-grade education (AR 35, 128), and had relevant work experience as a galvanizer,

bakery helper, and groundskeeper (AR 35).  In his applications, Sanders alleged disability due to

chronic obstructive pulmonary disorder ("COPD"), depression, anxiety, hypertension, and

asthma.  (AR 397).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and

transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner . . . , with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by

substantial evidence, which means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)

(citation omitted).  The decision will be reversed "only if [it is] not supported by substantial

2

evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).  "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citations omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford*, 227 F.3d at 869 (citations omitted).  "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted).  "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.  ANALYSIS

#### A.  The Law

Under the Act, a claimant seeking DIB or SSI must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence:  (1) whether the claimant is

currently unemployed in substantial gainful activity, (2) whether he has a severe impairment, (3) whether his impairment is one that the Commissioner considers conclusively disabling, (4) whether he is incapable of performing his past relevant work; and (5) whether he is incapable of performing any work in the national economy.[1]  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. §§ 404.1520, 416.920.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled.  *Id.*  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner.  *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

On December 24, 2020, the ALJ issued a decision that ultimately became the Commissioner's final decision.  (AR 10-37).  At step one, the ALJ concluded that Sanders had not engaged in substantial gainful activity since January 1, 2014, his alleged onset date.  (AR 13).  At step two, the ALJ found that Sanders had the following severe impairments:  major depressive disorder and generalized anxiety disorder.  (*Id.*).

At step three, the ALJ concluded that Sanders did not have an impairment or combination of impairments severe enough to meet or equal a listing.  (AR 14).  The ALJ then assigned Sanders the following RFC:

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations:

---

[1] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations.  20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. §§ 404.1520(e), 416.920(e).

> The claimant can perform simple, routine tasks and follow
> instructions throughout the workday.  The tasks contemplated are
> SVP 1 and 2 type tasks that can be learned within a short period
> through short demonstration, or when beyond short demonstration,
> within 30 days.  The tasks may be a[] simple and mundane task
> such as taking and packing the same item all day every day, or a
> task that is simple in nature but completed before moving to the
> next task, such as picking up one item, inspecting it for a flaw-such
> as a bur, and placing it into piles or boxes all day every day or such
> as vacuuming, then emptying trash cans and then dusting, in one
> office or room before moving to the next office or room.
> However, the type of tasks remain the same from day to day. The
> claimant can respond or adapt to the changes, cope with the stress
> and engage in the decision making required of such tasks.  The
> claimant can engage in superficial interaction with supervisors,
> coworkers and the public in a manner consistent with SVP 1 and 2
> type tasks, in which casual conversation can take place if desired
> by the claimant and allowed by the employer, but otherwise
> prolonged and intense conversation is not actually needed for task
> completion.  With such limitations in place, the claimant can
> maintain the concentration, persistence, adaptation and even the
> pace required of such tasks, for two hour increments, and for eight
> hour work days, within the confines of normal work place breaks
> and lunches, on a sustained day to day basis.

(AR 16).

The ALJ found at step four that Sanders was unable to perform any of his past relevant

work.  (AR 35).  At step five, the ALJ found that given his age, education, work experience, and

RFC, Sanders could perform other jobs that exist in substantial numbers in the national economy

including cleaner, dining room attendant, cleaner II, and cafeteria attendant.  (AR 36).  As such,

Sanders's applications for DIB and SSI were denied.  (AR 37).

### C.  The RFC

As to the RFC, Sanders first argues that the ALJ's hypothetical to the VE does not match

his ultimate RFC Formulation.  (ECF 23 at 12).  In support of his argument, Sanders observes

that a portion of the ALJ's hypothetical was inaudible to the Court Reporter, and as a result not

reflected on the transcript.  (*Id.*; *compare* AR 16 ("With such limitations in place, the claimant can maintain the concentration, persistence, adaptation and even the pace required of such tasks, for two hour increments, and for eight hour work days . . . ."), *with* AR 90-91 ("With such limitations in place, the individual can maintain the concentration, the persistence, the adaption, and even the pace required for such tasks [INAUDIBLE] eight hour workdays . . . .").  Sanders suggests that the most natural reading of the transcript is that the ALJ asked the VE to consider a hypothetical individual who could maintain concentration for "such tasks for eight hour work-days."  (ECF 23 at 12).

The Commissioner counters that because the jobs identified by the VE in response to the ALJ's hypothetical were all unskilled—which under the Commissioner's own policies necessarily implicates the ability to maintain concentration for two-hour segments—the most natural reading is that the ALJ's hypothetical matched the ultimate RFC formulation.  (ECF 20 at 8; *see* AR 91); *see also Jaramillo v. Colvin*, 576 F. App'x 870, 875-76 (10th Cir. 2014) ("But that finding [that the claimant can maintain concentration in two-hour segments] conforms with [Program Operations Manual ("POMS")] DI 25020.010 B.2.a., which states that any job, including unskilled work, requires '[t]he ability to maintain concentration and attention for extended periods (the approximately 2–hour segments between arrival and first break, lunch, second break, and departure),' and with POMS DI 25020.010 B.3.d., which lists the ability to 'maintain attention for extended periods of 2-hour segments (concentration is not critical)' among 'Mental Abilities Critical For Performing Unskilled Work.'").

While the Court is not convinced that Sanders's proffered reading of the hypothetical is the most natural reading, the fact remains that the record is unclear as to whether the ALJ's hypothetical actually included all the limitations eventually incorporated in the RFC.  "When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record."  *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases).  Further, "[p]ursuant

6

to sentence three of 42 U.S.C. § 405(g) . . . the Commissioner is required to file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." *Howell v. Saul*, No. 1:19-CV-04990-JPH-DLP, 2021 WL 1758946, at *2 (S.D. Ind. May 4, 2021). Indeed, "'[h]aving the "whole record" before it is crucial' to the Court's judicial review." *Id.* (quoting *Miami Nation of Indians of Ind., Inc. v. Babbitt*, 979 F. Supp. 771, 775 (N.D. Ind. 1996)). At the very least, the Court "must be able to trace the ALJ's path of reasoning" from the record to his decision. *Clifford*, 227 F.3d at 872; *see also Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) ("[T]he ALJ must still build an accurate and logical bridge between the evidence and the result." (citation and internal quotation marks omitted)).

Here, because a portion of the ALJ's hypothetical was inaudible, the Court can only speculate as to whether it adequately included all of Sanders's impairments.[2] *See Miller v. Astrue*, No. 3:11-CV-109-TLS-CAN, 2012 WL 2529249, at *7 (N.D. Ind. Apr. 16, 2012), *R. & R. adopted*, No. 3:11-CV-109-TLS, 2012 WL 2529194 (N.D. Ind. June 29, 2012). "The Court recognizes that the ALJ may have properly posed a hypothetical to [the VE], but the record does not so indicate. The Court must have a complete record in order to assess whether the ALJ's analysis in this regard was proper." *Id.* (recommending remand where portions of the ALJ's hypothetical to the VE were inaudible). Accordingly, this matter must be remanded.[3]

---

[2] While the Court is cognizant of the Commissioner's argument regarding the requirements of unskilled work in POMS, "'[t]he POMS manual has no legal force' and is not controlling." *Thompson v. Astrue*, No. 3:11-CV-472 CAN, 2013 WL 393290, at *4 (N.D. Ind. Jan. 31, 2013) (quoting *Parker for Lamon v. Sullivan,* 891 F.2d 185, 190 (7th Cir. 1989)). Further a VE is not necessarily required to conform his testimony to POMS and there is no indication that the VE did so here. *See generally Remer v. Berryhill*, No. 17-CV-1170-JM(WVG), 2018 WL 3126104, at *6 (S.D. Cal. June 26, 2018), *R. & R. adopted,* No. 17-CV-1170 JM(WVG), 2018 WL 3773846 (S.D. Cal. Aug. 9, 2018) (rejecting the contention that "the VE's testimony must not contradict POMS").

[3] Because remand is required on other grounds, the Court does not reach Sanders's argument regarding the weight the ALJ assigned to the medical source opinion of Lauren LaRoe, A.N.P. (*See* ECF 23 at 9, 13-15). That being said, the ALJ discounted Ms. LaRoe's opinion in part because he found that "there is very little indicating [Ms. Laroe] actually examined [Sanders]." (AR 34). The Court observes, however, that there are multiple instances in the record where Ms. LaRoe is listed as Sanders's primary service provider and appears to have drafted and signed

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.  The Clerk is DIRECTED to enter a judgment in favor of Sanders and against the Commissioner.

SO ORDERED.

Entered this 30th day of August 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

his treatment notes.  (*See, e.g.*, AR 637, 644-45, 652-53, 660-61, 668-69, 676-77, 684-85, 69293).  While the ALJ is entitled to consider the length and extent of Sanders's and Ms. LaRoe's treatment relationship, *see* 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3), on remand he should ensure that he does not mischaracterize the evidence of that treatment relationship, *see Beaver v. Colvin*, No. 2:13-CV-269-JEM, 2014 WL 4804210, at *10 (N.D. Ind. Sept. 26, 2014) ("If ALJs mischaracterize the evidence in the record, they fail to trace their reasoning to their conclusion.").